UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

T.C. et al.,

Plaintiffs,

-v-

NEW YORK STATE DEPARTMENT OF
HEALTH et al.,

Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/20/2024__

No. 22-cv-5045 (MKV)

MEMORANDUM OPINION & ORDER
GRANTING MOTION TO DISMISS AND
DENYING MOTION TO INTERVENE

MARY KAY VYSKOCIL, District Judge:

This case is about individuals with various developmental and intellectual disabilities who face long delays in moving from restrictive institutional facilities to community-based residential settings.  Plaintiffs' counsel originally filed this case on behalf of eight individuals, an organization named Disability Rights New York ("DRNY"), and a purported class of individuals alleged to be similarly situated to the eight original individual plaintiffs [ECF No. 1].  Within a few months of the filing of the original complaint, two of the individual plaintiffs were placed in community residences, and Plaintiffs filed their operative pleading, the Amended Complaint, which removed the plaintiffs who had been placed, added two new individual plaintiffs, and added claims of constitutional violations [ECF No. 35 ("AC")].

Plaintiffs then moved for a preliminary injunction requiring Defendants—the New York State Department of Health, Mary Bassett in her official capacity as Commissioner of DOH, the New York State Office for People with Developmental Disabilities ("OPWDD"), and Kerri Neifeld in her official capacity as Commissioner of OPWDD—"promptly" to place the individual plaintiffs in community residences [ECF Nos. 37, 38, 39, 40].  Defendants responded that they

were working diligently to secure appropriate placements (and had found a placement for one of the plaintiffs since the filing of the Amended Complaint), but each individual presented a unique and complex set of behavioral challenges, clinical needs, and geographical preferences, and, in many instances, community residences had concluded they could not safely serve these individuals alongside their other residents [ECF No. 46, 47, 48, 49, 50, 51, 52, 53, 54].

The Court denied Plaintiffs' motion for a preliminary injunction [ECF No. 71 ("Op.")]. The Court concluded that Plaintiffs had failed to show a likelihood of success on the merits of any of their claims. Moreover, Plaintiffs had failed to identify specific relief that would remedy their alleged injuries. Nevertheless, the Court set a relatively short deadline for Defendants to file an affidavit detailing what further steps they had taken to place the remaining individual plaintiffs, and Defendants reported significant progress [ECF No. 72-1].

In the interim, Defendants filed a motion to dismiss most, but not all, of Plaintiffs' claims [ECF Nos. 67, 68, 70]. As relevant here, Defendants argued that DRNY lacks standing. Plaintiffs opposed that motion [ECF No. 69 ("Pl. Opp.")].

Thereafter, approximately thirteen months after they initiated this case, Plaintiffs' counsel filed a motion to intervene, arguing that "the addition of the Proposed Plaintiffs is needed to protect the interests of all class members" [ECF No. 77, 78 ("Pl. Mot.") at 2, 79, 80]. By that time, Defendants had secured community-based placements for nine of the ten individual plaintiffs who had appeared in this action since its inception. *See* Pl. Mot. at 1. Plaintiffs' counsel proposed to allow intervention as plaintiffs by eight new individuals, with diverse diagnoses, requirements, and preferences, who were awaiting placements in community residences at the time Plaintiffs' counsel filed the motion.

Now, as Plaintiffs concede, Defendants have "successfully placed" all of the individual

plaintiffs and many of the proposed intervenors [ECF No. 97 ("Pl. January 2024 Letter")]. Defendants now seek dismissal of this entire action for lack of subject matter jurisdiction [ECF Nos. 96, 98]. Plaintiffs' counsel argue that the Court should respond to the mootness of the individual plaintiffs' claims by granting intervention. For the reasons set forth below, this case is DISMISSED, and the motion to intervene is DENIED.

## I. <u>BACKGROUND</u>

### A. Plaintiffs Initiate this Action with Eight Individual Plaintiffs and DRNY

Plaintiffs initiated this action by filing the original complaint [ECF No. 1 ("OC")]. The original complaint named as plaintiffs eight individuals who have various developmental and intellectual disabilities, among other issues, and who, when the original complaint was filed, were living in institutions. OC ¶¶ 2, 11–18. Several of these plaintiffs appeared through a next friend.[1] The other individual plaintiffs asserted their claims on behalf of themselves and a purported class of similarly situated individuals. An organization called Disability Rights New York ("DRNY"), "a Protection and Advocacy system," was also named as a plaintiff. OC ¶ 20.

Plaintiffs alleged that Defendants had determined each individual plaintiff was entitled to move from the institution where he or she was living to a less restrictive, community-based Certified Residential Opportunity ("CRO") and to receive support services funded by the Medicaid Home and Community Based Services Waiver ("HCBS Waiver"). OC ¶¶ 1–4, 91; *see also* AC ¶¶ 1–4. Plaintiffs further alleged that they had remained in institutions long after they were deemed entitled to move to community residences. *See* OC ¶¶ 6, 88–89, 128–129, 132, 159, 163, 185–189, 218, 243, 260, 279. According to Plaintiffs, there were plenty of vacancies in community residences, but Defendants had failed to furnish the services to which the individual plaintiffs were

---

[1] The Court granted Plaintiffs' unopposed motion for the individuals with disabilities and their next friends to proceed anonymously [ECF Nos. 30, 42].

entitled because, Plaintiffs alleged, Defendants had failed to develop an adequate system for placing these individuals. *See* OC ¶¶ 6, 319. Notably, after treating physicians recommend an individual for a CRO, individuals at OPWDD attempt to identify an appropriate placement and make referrals, and then a provider of residential services, whether private or state operated, must agree to accept the individual. *See* OC ¶¶ 6, 319.

Defendants filed a pre-motion letter seeking leave to file a motion to partially dismiss the original complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that DRNY lacks standing and various claims were facially deficient [ECF No. 31]. Plaintiffs first filed a letter responding to arguments in Defendants' pre-motion letter [ECF No. 32]. Plaintiffs then filed another letter informing the Court of their intention to file an amended complaint as of right [ECF No. 34].

### B.  The Amended Complaint

Plaintiffs filed the Amended Complaint [ECF No. 35 ("AC")]. The Amended Complaint removed two of the individual plaintiffs named in the original complaint because they had been placed in appropriate CROs. It added two new individual plaintiffs and constitutional claims. The Amended Complaint asserts nine causes of action.

First, Plaintiffs alleged that Defendants' failures to provide the plaintiffs with Certified Residential Opportunities and HSBC Waiver services (which cannot be provided to individuals in institutions) violate the "reasonable promptness" provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(8), and 42 U.S.C. § 1983. AC ¶¶ 384–389. Second, Plaintiffs alleged that Defendants' failures to make community residences and HSBC Waiver services available as an alternative to continued institutionalization violates the "freedom of choice" provision of the Medicaid Act, 42 U.S.C. § 1396n(c)(2)(C), and Section 1983. AC ¶¶ 390–393. Third, Plaintiffs alleged that they

were being denied the right to an administrative hearing under the Medicaid Act, 42 U.S.C. § 1396a(a)(3).  AC ¶¶ 394–398.  Fourth, Plaintiffs alleged that they were being discriminated against and unnecessarily segregated in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and its "integration mandate," 28 C.F.R. § 35.130(d).  AC ¶¶ 399–408.  Fifth, Plaintiffs alleged that Defendants' methods of administering the HSBC Waiver program are discriminatory, in violation of the ADA, 42 U.S.C. § 12132.  AC ¶¶ 409–415.  Sixth, Plaintiffs alleged violation of the inclusion mandate of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.  AC ¶¶ 415–424.  Seventh, Plaintiffs alleged discriminatory methods of administration in violation of the Rehabilitation Act, 29 U.S.C. § 794.  AC ¶¶ 425–431.  Eighth, Plaintiffs alleged that they have a constitutionally protected interest in Medicaid-funded community residences and HSBC Waiver services and that Defendants were denying Plaintiffs a hearing on the denial of those benefits in violation of the Due Process Clause of the Fourteenth Amendment.  AC ¶¶ 432–438.  Ninth, Plaintiffs alleged that, because they lived in institutions while they awaited placements in community residences, Defendants were violating Plaintiffs' constitutional rights to be free from bodily restraint.  AC ¶¶ 439–445.

### C.  Plaintiff's Motion for Emergency Relief

Four months after they initiated this action, Plaintiffs filed a motion for a preliminary injunction [ECF Nos. 37, 38, 39, 40].  Plaintiffs requested "an order requiring Defendants promptly to secure placement in a community-based certified residential opportunity for Plaintiffs" [ECF No. 37].  In opposing Plaintiffs' motion for a preliminary injunction, Defendants explained that they were working diligently to place each individual plaintiff in an appropriate community-based residence.  They explained, however, that each individual plaintiff presented a unique and complex set of behavioral challenges, clinical needs, and geographical preferences.  Defendants explained

that, in many instances, residential providers had concluded that they could not safely serve the individual plaintiffs alongside their other residents. Defendants included detailed affidavits setting forth their efforts to place each of the individual plaintiffs named in the Amended Complaint [ECF No. 46, 47, 48, 49, 50, 51, 52, 53, 54].

The Court held a hearing on Plaintiffs' motion for a preliminary injunction [ECF No. 97-1 ("Tr.")].  On the record at the hearing, Plaintiffs acknowledged that two of the plaintiffs named in the original complaint were removed from the lawsuit because "they were placed in suitable community-based residences." Tr. at 11:7–18.  Plaintiffs also acknowledged that, as of the date of the hearing, one of the plaintiffs named in the Amended Complaint had been accepted for placement in a CRO.  Tr. at 11:24–12:2.  Furthermore, Plaintiffs acknowledged that "the defendants [were] endeavoring to meet their obligations" to place each individual plaintiff in a CRO but stated that Plaintiffs' "position [was] that the law requires outcomes and not merely efforts."  Tr. at 12:18–22.

At the hearing, the Court repeatedly pressed Plaintiffs on what relief they sought.  Plaintiffs ultimately requested an order directing Defendants to place each individual plaintiff in a CRO within 14 days, or, if Defendants were unable to do so, to "come back to this Court to detail their efforts to try to obtain such a placement for them and to detail why" each plaintiff was "not appropriate for any of the" residential providers operated directly by the State. Tr. at 17:9–19; see Tr. at 10:7–17; 15:13–25; 17:6–8).  Plaintiffs argued that "OPWDD has to be the provider of last resort." Tr. at 22:8–9. In other words, Plaintiffs contended that if no voluntary provider of residential services would agree to accept a particular individual, one of the State-operated residential providers should be compelled to accept the individual, even if that facility represented that it could not safely serve the individual together with its other residents.  Tr. at 22:8–9.

The Court denied Plaintiffs' motion for a preliminary injunction [ECF No. 71 ("Op.")]. The Court concluded that Plaintiffs had failed to show a likelihood of success on the merits of any of their claims. *See* Op. at 12. Nevertheless, the Court set a deadline for Defendants to file a status report further detailing their efforts to place the remaining individual plaintiffs in community residences. *See* Op. at 1, 21. In response to the Court's Order, Defendants reported that: two more plaintiffs had accepted placements; one plaintiff had declined a placement he was offered but was pursuing another potential placement; two plaintiffs were in the process of being screened for potentially appropriate placements; Defendants' ongoing efforts to find a potential placement for one plaintiff had been unsuccessful; and one plaintiff had been deemed too unstable for discharge from a hospital environment [ECF No. 72-1].

### D. Defendants' Motion To Dismiss

Defendants filed a motion partially to dismiss the Amended Complaint [ECF Nos. 67, 68 ("Def. MTD"), 70]. Specifically, the motion seeks dismissal of DRNY for lack of standing. The motion also seeks dismissal of most of the claims in the Amended Complaint for various reasons. Plaintiffs opposed the motion to dismiss [ECF No. 69].

### E. The Motion of Plaintiffs' Counsel To Add Intervenors

Thereafter, approximately thirteen months after they initiated this case, Plaintiffs' counsel filed the pending motion to intervene [ECF No. 77, 78 ("Pl. Mot."), 79, 80]. When Plaintiffs' counsel filed the motion to intervene, Defendants had secured community-based placements for nine of the ten individual plaintiffs who have appeared in this action since it began (all but one of the individual plaintiffs named in the Amended Complaint). *See* Pl. Mot. at 1; Def. Opp. at 2. Plaintiffs' counsel proposed to allow intervention as plaintiffs by eight new individuals who were, at the time Plaintiffs' counsel filed the motion to intervene, living in institutions and awaiting

placements in community residences.

Plaintiffs' counsel seeks intervention as of right and, in the alternative, by permission. Plaintiffs' counsel argues that "[i]ntervention is necessary to protect the interests of the Proposed Plaintiffs and the class because Defendants are systematically seeking to moot the claims of the original named plaintiffs." Pl. Mot. at 2. Although the premise of the motion to intervene is that this matter will proceed as a class action, Plaintiffs have not filed a motion for class certification. Like the individual plaintiffs named in the original complaint and the Amended Complaint, the proposed intervenors have different and complex diagnoses, clinical needs, behavioral challenges, staffing requirements, and placement preferences. Defendants ask the Court to deny intervention as of right and by permission [ECF No. 84 ("Def. Opp.")].

### F.  The Placement of All Individual Plaintiffs and Many Proposed Intervenors

After the motion to intervene was fully submitted, Defendants placed in a community residence the last individual plaintiff named in the Amended Complaint. Defendants therefore filed a letter requesting dismissal of this entire action for lack of subject matter jurisdiction [ECF No. 96 ("Def. January 2024 Letter")]. They argue that DRNY has lacked standing from the outset and, now, the claims of all of the individual plaintiffs are moot.

Plaintiffs filed a letter in opposition to Defendants' request [ECF No. 97 ("Pl. January 2024 Letter")]. Plaintiffs' counsel acknowledged that Defendants have "successfully placed" in an appropriate community residence every individual plaintiff who has appeared in this action. Pl. January 2024 Letter at 2. Indeed, Plaintiffs' counsel acknowledged that "many of the proposed intervenor Plaintiffs also have been placed or have been offered placement in the community." *Id*. According to Plaintiffs' counsel, however, these placements reflect Defendants' efforts to moot Plaintiffs' claims. *Id*. Plaintiffs' counsel seeks to proceed with the lawsuit via the claims of the

remaining, unplaced proposed intervenors.  *Id*. at 3.

Defendants filed a letter in response to Plaintiffs' opposition [ECF No. 98 ("Def. February 2024 Letter")].  Defendants object to Plaintiffs' characterization of their motives for placing the individual plaintiffs and proposed intervenors in community residences.  *See* Def. February 2024 Letter at 1 n.1.  Defendants maintain that they have followed their normal processes, continuing efforts to find appropriate placements that were ongoing before Plaintiffs brought this suit.  *See* Def. Opp. at 2 ("Named Plaintiffs have received exactly the relief they requested through the normal OPWDD placement process"); Def. February 2024 Letter at 1 n.1.

### G.  The Discovery Process

The Court specifically directed the parties to proceed expeditiously with the discovery in this case.  *See* Tr. at 43:13–18.  In one instance, approximately six months ago, the parties raised a dispute about the scope of the discovery [ECF No. 74].  The Court ruled: "since Plaintiffs assert putative class claims, Plaintiffs are entitled to non-burdensome discovery on Defendants' general practices relating to individuals in institutional settings who have been deemed eligible for placements in residential settings insofar as that information will illuminate whether Plaintiffs can satisfy the prerequisites of Rule 23 of the Federal Rules of Civil Procedure" [ECF No. 83].  In other words, the Court long ago instructed Defendants to produce the discovery necessary for Plaintiffs to file a motion for class certification.

Plaintiffs never thereafter suggested that Defendants were not complying with the Court's Order or raised another discovery dispute with the Court.  Then, only after Defendants informed the Court that they had placed all of the remaining individual plaintiffs and many of the proposed intervenors, Plaintiffs asserted that Defendants have failed to produce adequate policy-related discovery.  Pl. January 2024 Letter at 2.  Defendants maintain that they have complied with the

Court's Order and produced all required discovery.  Def. February 2024 Letter at 3–4.

## II.    <u>LEGAL STANDARDS</u>

### A.  Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold question, rooted in the case or controversy requirement of Article III.  *See All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006).  Indeed, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson v. Shineski*, 562 U.S. 428, 434 (2011).  Moreover, "objections to subject-matter jurisdiction [] may be raised at any time." *Id*. at 434-35; *Biener v. Credit Control Services, Inc.*, No. 21-cv-2809 (KMK), 2023 WL 2504733, *3 (S.D.N.Y. 2023) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed.").

Mootness destroys subject matter jurisdiction because, when claims are moot, there is no longer a case or controversy between the parties for the Court to resolve.  *Dark Storm Indus. v. Hochul*, 2021 WL 4538640, *1 (2d Cir. 2021) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").  "[T]he condition of mootness [] is a condition that deprives the court of subject matter jurisdiction." *Muhammad v. City of New York*, 126 F.3d 119, 122-23 (2d Cir. 1997); *see also Allen v. Wright*, 468 U.S. 737, 750 (1984) (mootness, like standing, operates as "fundamental limits on federal judicial power in our system of government").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994); *see Bank v. Alliance Health*, 669 Fed. Appx. 584, 586 (2d Cir. 2016); *DeCastro v. City of New York*, No. 16-cv-3850 (RA), 2020 WL 4932778, at *9 & nn. 15–16 (S.D.N.Y. 2020) (collecting cases on class action standing and mootness); *LaVoice v. UBS*, 2013 WL 5380759, at *3 n.6 (S.D.N.Y. 2013).  Narrow exceptions to this general mootness rule may apply where a motion for class-certification is already pending, or the plaintiff has not yet had a reasonable opportunity to move for class certification. *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *2 (S.D.N.Y. Nov. 8, 2006).

### B.  Intervention

Rule 24(a) of the Federal Rules of Civil Procedure provides that a court "must" permit intervention "[o]n timely motion" by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Interpreting this Rule, the Second Circuit has held: "To prevail on a motion for intervention as of right, a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).  The Second Circuit has "underscored that a '[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application.'" *Floyd v. City*

*of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (emphasis in original).

Pursuant to Rule 24(b), a court may in its discretion permit intervention on a timely motion by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is wholly discretionary. Indeed, as the Second Circuit has pointed out, a "denial of permissive intervention has virtually never been reversed." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). Moreover, the Second Circuit has specifically condoned a district court denying permissive intervention based on the same reasons it denied intervention as of right. *See Floyd*, 770 F.3d at 1057; *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 & n.3 (S.D.N.Y. 2016).

## III.   DISCUSSION

The Court must dismiss this case for lack of subject matter jurisdiction. The claims of the individual plaintiffs are moot, and DRNY lacks standing. Contrary to Plaintiffs' contentions, the Court is not required to resuscitate this case via intervention. Plaintiffs' counsel insists that "[i]n the class action context" intervention should be used in response to "pre-certification mooting." Pl. Mot. at 6 (quoting *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006)). But Plaintiffs' counsel has not moved for class certification, even though they filed this case as a putative class action in 2022, and the Court long ago ordered Defendants to produce discovery relevant to such a motion [ECF Nos. 1, 83]. Furthermore, it appears unlikely that the proposed intervenors' claims are capable of classwide resolution. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This lawsuit cannot be a moving target in which Plaintiffs' counsel add new plaintiffs as "Named Plaintiffs . . . receive[] exactly the relief they requested

through the normal OPWDD placement process."  Def. Opp. at 2.

## A. DRNY Lacks Standing.

DRNY alleges that, under federal law, it is a "Protection and Advocacy System" with the authority to "bring[] claims on behalf of individuals with disabilities."  AC ¶ 19–21.  Plaintiffs expressly disclaim reliance on the doctrine of "associational' standing."[2]  Pl. Opp. at 23 & n.15.  Rather, Plaintiffs contend that "DRNY has standing to participate as a plaintiff based on standing conferred directly by Congress."  Pl. Opp. at 23.

The great weight of precedent, however, makes clear that DRNY lacks standing.  "[T]he 'irreducible constitutional minimum' of standing" requires a plaintiff to show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–560 (1992)); *see W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–107 (2d Cir. 2008).  There is, moreover, a "general prohibition on a litigant's raising another person's legal rights."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).

Drawing on these principles, a court in the Eastern District of New York recently concluded that DRNY lacked standing in a case similar to this one.  *Disability Rights New York v. New York State et al.*, 2019 WL 2497907, at *5 (E.D.N.Y. June 14, 2019) ("DRNY, even though authorized under statute to bring claims on behalf of others, is asserting injuries that it did not suffer, but were

---

[2] An organization may have Article III standing in one of two ways: (1) it may have associational standing to sue on behalf of its members if one member of the organization has standing, *see NY Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2014); or (2) the organization "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy," *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  If an organization is not relying on associational standing, it must satisfy the test for standing in the same way as any other person. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998); *Fam. Equal. v. Becerra*, 2022 WL 956256, at *3 (S.D.N.Y. Mar. 30, 2022), *aff'd sub nom.* 2024 WL 618760 (2d Cir. Feb. 14, 2024).

suffered by third-parties. In this Circuit, there is a bar on such third-party standing."), *report and recommendation adopted*, 2024 WL 20753 (E.D.N.Y. Jan. 2, 2024); *see also Woods Services v. Disability Rights New York*, 342 F. Supp. 3d 592, 603–605 (E.D. Pa. 2018) (dismissing DRNY's claims for lack of standing). This Court agrees. Plaintiffs cite their statutory authority to vindicate the rights of the disabled, but "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 578 U.S. at 339 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). Plaintiffs do not attempt to show that DRNY has suffered an injury itself. As such, Plaintiffs have not shown that DRNY has standing in its own right.

**B. The Individual Plaintiffs' Claims Are Moot.**

There is no question that the claims of the individual plaintiffs are moot. Plaintiffs admit that Defendants have "successfully placed" in a community residence every individual plaintiff who has appeared in this action, in the original complaint and the Amended Complaint. Pl. January 2024 Letter at 2. Indeed, Plaintiffs acknowledge that "many of the proposed intervenor Plaintiffs also have been placed or have been offered placement in the community." Pl. January 2024 Letter at 2. In other words, all of the individual plaintiffs have received precisely the outcome they sought when they brought this lawsuit, and there is no longer a live case or controversy between the individual plaintiffs and the defendants in this action. *See Dark Storm Indus.*, 2021 WL 4538640, *1; *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Plaintiffs cannot and do not contest that individual plaintiffs' claims become moot when those individuals are placed in community residences. Plaintiffs recognized this point when they filed the Amended Complaint and removed two of the original plaintiffs because they had been placed. *See* Tr. at 11:7–18. As further confirmation, Plaintiffs' counsel accuse Defendants of

systematically mooting the individual plaintiffs' claims by placing them in community residences. *See* Pl. Mot. at 2; Pl. January 2024 Letter at 2; *see also* Def. Opp. ("Named Plaintiffs have received *exactly* the relief they requested through the normal OPWDD placement process," but Plaintiffs' attorneys merely "complain that this result has adversely affected their litigation posture."). Indeed, Plaintiffs' counsel urge the Court to grant their motion for intervention in response to the "pre-certification mooting" of the individual plaintiffs' claims. Pl. Mot. at 6 (quoting *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3).

The case or controversy requirement of Article III dictates that "at least one plaintiff must have standing to sue." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); U.S. Const. art. III, § 2. Here, DRNY lacks standing, and all of the individual plaintiffs' claims are moot. As such, the Court must dismiss this case for lack of jurisdiction.

**C. Plaintiffs' Counsel Cannot Resuscitate this Case Via Intervention.**

The motion to intervene was not brought by independent third parties who learned of this lawsuit and filed the motion in an effort to protect their potential interest. Rather, the motion to intervene is brought by Plaintiffs' counsel in an effort to save their purported class action. By their own account, Plaintiffs' counsel started "pursuing adequate class substitutions" when they "became aware of the potential need to fill a class representative gap after OPWDD placed several of the Plaintiffs into community residences." Pl. Mot. at 8. In these circumstances, the motion is not timely, and the proposed intervenors do not have an interest in this action that may be impaired by its disposition. For these reasons, the Court denies intervention "as of right *and* by permission." *Floyd*, 770 F.3d at 1058 (emphasis in original).

In further support of the Court's discretionary decision to deny permissive intervention, the Court observes that this case is unlikely to meet the requirements for class certification. The

proposed intervenors, like the plaintiffs, have different sets of diagnoses, behavioral challenges, staffing requirements, and preferences. They are screened by different sets of decisionmakers. All of these factors bear on the time it takes to place individuals in residential facilities. There is likely no "classwide resolution" available.[3] *Wal-Mart Stores*, 564 U.S. at 350.

Plaintiffs' counsel insist that the Court must grant their motion to intervene simply because they assert putative class claims, but Plaintiffs' counsel are wrong. Plaintiffs rely on cases in which a class had already been certified or a motion for class certification was pending when the claims of the named plaintiffs became moot and new named plaintiffs intervened. *See* Pl. Mot. at 6 (citing *In re Currency Conversion Fee Antitrust Litig.*, 2005 WL 3304605, at *1 (S.D.N.Y. Dec. 7, 2005) (certified); *Diduck v. Kaszycki & Sons Contractors, Inc.,* 149 F.R.D. 55, 57 (S.D.N.Y. 1993) (certified)). Plaintiffs have not filed a motion for class certification.

Plaintiffs' counsel also cite cases in which no motion for class certification had yet been filed because the litigation was in an early stage, and little or no discovery had taken place. *See In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3. This case is not remotely similar. The Court directed the parties to begin discovery six months before Plaintiffs' counsel filed the motion to intervene. *See* Tr. at 43:13–18. Moreover, the Court specifically ordered Defendants to produce discovery to "illuminate whether Plaintiffs can satisfy the prerequisites of Rule 23 of the Federal Rules of Civil Procedure" [ECF No. 83]. Plaintiffs never suggested that Defendants were failing

---

[3] As noted above and explained in detail in the Court's earlier Opinion [ECF No. 71], Plaintiffs have suggested that a form of classwide relief would be for Defendants to compel State-operated providers of residential services to accept any hard-to-place individual, even if the State-operated facility represents that it cannot safely serve that individual alongside its other residents. Op. at 8, 21–22; *see* Tr. at 22:8–9. But the "integration mandate" that Plaintiffs claim Defendants are violating by failing to place these hard-to-place individuals requires only reasonable modifications that do not "fundamentally alter the nature of the . . . program." *See* Op. at 21–22 (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) and quoting 28 C.F.R. § 35.130(b)(7)). As the Court previously explained, ordering Defendants to override the clinical judgment of residential facilities and compelling them to accept residents those facilities represent they cannot safely serve clearly "would require fundamentally altering the nature of the State program." Op. at 22.

to comply with that Order until after this case became moot, and Defendants maintain that they have complied.  *See* Def. February 2024 Letter at 3–4.

Plaintiffs also place enormous weight on a footnote in *Elisa W. v City of New York*, 82 F.4th 115 (2d Cir. 2023).  *See* Pl. January 2024 Letter at 2–3.  A putative class of children in foster care alleged "systemic failures" in the oversight of "agencies responsible for the day-today care of children."  *Elisa W. v. City of New York*, No. 15-cv-5273 (KMW), 2021 WL 4027013, at *1 (S.D.N.Y. Sept. 3, 2021), *vacated and remanded*, 82 F.4th 115 (2d Cir. 2023).  The plaintiffs in that case filed motions for class certification at the same time they filed the complaint and again four months later. *See id.* at *4; 15-cv-5273, ECF Nos. 1, 9, 75, 87.  Having denied those motions for class certification without prejudice, the district court later refused to dismiss the case as moot, concluding that "the Court [would have] the power" to "relate" a renewed motion for certification "back to the date of the original compliant," since the population of children in foster care is inherently transitory.  *Elisa W. by Barricelli v. City of New York*, No. 15-cv-5273 (LTS), 2017 WL 3841868, at *2 (S.D.N.Y. Sept. 1, 2017).  In an opinion vacating a later denial of class certification, the Second Circuit agreed that "class certification *may* relate back to the filing of the complaint, where . . . the putative class . . . are 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'"  *Elisa W.*, 82 F.4th at 122 n.2. (emphasis added) (quoting *Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994)).

Again, this case is not remotely similar.  As the Court has already stated, Plaintiffs' counsel have never filed a motion for class certification.  Contrary to the suggestion of Plaintiffs' counsel, the Second Circuit has never held—in *Elisa W.* or elsewhere—that purported class claims *must* relate back to the filing of a complaint, and dismissal for mootness is "barred" by the mere assertion

of purported class claims in a complaint.  Pl. January 2024 Letter at 2; *See Comer*, 37 F.3d at 798 ("[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot.").

Moreover, *Elisa W.* involved an inherently transitory population of children in foster care who were complaining about oversight of their "day-to-day care" before they aged out.  *Elisa W.*, 2021 WL 4027013, at \*1.  Here, the premise of Plaintiffs' case is that developmentally disabled individuals remain in institutions for extremely long periods of time.  Although Plaintiffs' counsel now accuse Defendants of strategically expediting the placement of the individual plaintiffs to moot their claims, Pl. January 2024 Letter at 2, Defendants have documented their longstanding efforts to place these individuals, which efforts predate the filing of the original complaint [ECF No. 46, 47, 48, 49, 50, 51, 52, 53, 54].  Indeed, at the hearing on their motion for a preliminary injunction, Plaintiffs credited Defendants for "endeavoring to meet their obligations" to place each plaintiff in a community residence. Tr. at 12:18–22.  Notwithstanding the insistence of Plaintiffs' counsel, the Court is not required to permit intervention by new plaintiffs merely because Plaintiffs assert putative class claims in their pleading.

The Court thus turns to the ordinary requirements for intervention.  In the circumstances of this case, the motion to intervene is not timely.  *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986) (the district court should base its timeliness "determination upon all of the circumstances of the case").  Timeliness is a prerequisite for both intervention as of right and permissive intervention, and the untimeliness of the motion, alone, is sufficient reason to deny it.  *See Floyd*, 770 F.3d at 1057; *Kamdem-Ouaffo*, 314 F.R.D. at 134.

Plaintiffs' counsel filed the motion to intervene more than a year after they initiated this

lawsuit.  More importantly, Plaintiffs' counsel waited long after it was apparent that Defendants would continue their efforts to place plaintiffs, and, as such, plaintiffs would receive the very relief they sought, and their claims would become moot.  *See Catanzano v. Wing*, 103 F.3d 223, 233 (2d Cir. 1996) (the length of time the movant knew or should have known that the intervention motion would be necessary is "among the most important factors").  More than a year ago, Plaintiffs filed the Amended Complaint and removed two of the original plaintiffs because they had been placed in community residences, even before Plaintiffs filed their motion for a preliminary injunction requesting prompt placement for each individual plaintiff.  *See* AC; Tr. at 11:7–18.  Shortly after the Court denied the motion for a preliminary injunction, Defendants reported finding placements for several more plaintiffs [ECF No. 72-1].  Yet Plaintiffs' counsel waited five months after that status report to seek intervention.  The motion is not timely.

Furthermore, the proposed intervenors cannot show that they have an interest in this action that may be impaired by its disposition.  *See In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th at 799.  "An interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Dubarry v. Annucci*, No. 21-cv-5487 (KMK), 2022 WL 17850435, at *1 (S.D.N.Y. Dec. 22, 2022).  Nor will "interests of a general or indefinite character." *H.L. Hayden Co. of NY. Inc. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986).

The proposed intervenors do not have direct, legally cognizable interests in the claims of the individual plaintiffs named in the Amended Complaint.  Each individual plaintiff and proposed intervenor is a person, with a unique set of disabilities, requirements, and preferences, who wishes to live in the appropriate community residence for his or her own needs.  It makes no difference to E.B., one of the proposed intervenors, that Plaintiff A.H. has been placed and her claims are moot.

Rather, any interest of the proposed intervenors in this action is contingent on the filing of a motion for class certification and the granting of such motion.

Relatedly, the Court denying the motion to intervene and dismissing this action will not impair the proposed intervenors' ability to protect their interests. They simply must file their own lawsuits to vindicate their own rights. Plaintiffs asserts that the proposed intervenors face a "significant risk of prejudice" if they are required to file new actions. Pl. Mot. at 9. However, Plaintiffs fail to substantiate that assertion. They say only that the proposed intervenors would have to file a new lawsuit, and a new court would have to "familiarize itself with the issues here." Pl. Mot. at 9 & n.3. "This is not the sort of adverse practical effect contemplated by Rule 24(a)(2)." *Sec. & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972). For all of these reasons, the proposed intervenors are not entitled to intervene as of right.

The Court also declines to grant permissive intervention because the motion to intervene is not timely and because the Court's decisions to deny intervention and dismiss this case will not impair the proposed intervenors' ability to protect their interests. In addition, as Defendants point out, the arguments in favor of intervention are all premised on the assumption that this case should and will proceed as a class action, but Plaintiffs are unlikely to satisfy the requirements of Rule 23. *See* Def. Opp. at 2–3, 12–13.

According to Plaintiffs' counsel, this case is about "a crises of needless and widespread institutionalization" caused by Defendants' failures to promptly place individuals in community residences. AC ¶ 6. But the individual plaintiffs and proposed intervenors all present different and complex diagnoses, behavioral challenges, clinical needs, and preferences that factor into their placements. They have faced different very lengths of delays in their placements. They have been evaluated by different decisionmakers. In many instances, several different residential providers

independently refused to accept these individuals.

As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, it is not enough for class certification that a purported class raise common questions (*e.g.* why are these placements taking so long?); rather, the "class-wide proceeding" must be able "to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original).  As became evident in connection with Plaintiffs' motion for a preliminary injunction, when these individuals are grouped together, the only relief they can seek is an order instructing Defendants to "promptly" find an appropriate placement for each individual [ECF No. 37].  As the Court explained in its decision denying preliminary relief, such an order "arguably is tantamount to 'a simple command that the defendant obey the law,' which would violate the specificity and clarity requirements for injunctions set forth in Rule 65(d) of the Federal Rules of Civil Procedure."  Op. at 14 (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001)).  Thus, far from being prejudiced by the denial of the motion to intervene and dismissal of this purported class action, the proposed intervenors who have not yet been placed might be better served by filing individual lawsuits.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion to intervene [ECF No. 77] is DENIED, and this case is dismissed.  The Clerk of Court respectfully is requested to terminate all pending motions and close this case.

SO ORDERED.

Date:  February 20, 2024
       New York, NY

**MARY KAY VYSKOCIL**
**United States District Judge**